UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BAY STREET NEIGHBORHOOD, LLC, : | |
| Plaintiff, : | |
| : | |
| v. : | C.A. No. 15-150S |
| : | |
| GENE P. DEVINE, CRUMP INSURANCE : | |
| SERVICES, INC., JOHN DOE 1, JOHN : | |
| DOE 2, : | |
| Defendants. : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

    This lawsuit is part of an ongoing legal struggle arising from significant environmental contamination discovered in a residential neighborhood in Tiverton, Rhode Island, in 2002. Since, Plaintiff Bay Street Neighborhood, LLC ("Bay Street") and its homeowner-members have worked tirelessly on remediation, despite setbacks including the bankruptcy of the contractor hired to perform the cleanup. The homeowners have brought claims against many parties in various forums over the years. This suit is just one piece of the legal imbroglio; it seeks recovery from an insurance agency (CRC Insurance Services, Inc., "Crump")[1] and its agent (Gene Devine) for negligently procuring a policy to pay for cost overruns on the cleanup, which was issued by an insurer that declined coverage when presented with a claim.

    Mindful of the statute of limitations, Bay Street filed this action in 2012 in Rhode Island Superior Court, but it did not serve the complaint on Crump (or Devine) until thirty months later (933 days) while waiting to see if the environmental cleanup could be completed without pressing these claims. Ultimately, with the cleanup cost far exceeding available funds, the

---

[1] CRC Insurance Services, Inc., is named in the caption as "Crump Insurance Services, Inc."

insurer persisting in its refusal to honor the policy, and no other sources of recovery available, Bay Street served Crump (and Devine) in 2015. Crump promptly removed based on diversity and filed this motion to dismiss, which has been referred to me for report and recommendation. 28 U.S.C. § 636(b)(1)(B). Devine does not join the motion.[2]

Crump argues that the delay in service is grounds for dismissal with prejudice under Fed. R. Civ. P. 41, generally for failing to prosecute and specifically for failing to comply with the directive in R.I. Super. Ct. R. Civ. P. 4(l) that service must be completed within 120 days; in the alternative, it relies on Fed. R. Civ. P. 12(b)(5) based on insufficient service of process. Bay Street objects and argues the Court must apply R.I. Super. Ct. R. Civ. P. 41 on failure to prosecute, which precludes dismissal for five years after the complaint is filed, by contrast to the federal version, which contains no such limitation. In Bay Street's view, this Court must apply the state rule, because the federal rule violates Erie and the Rules Enabling Act by abridging a substantive state-law right. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); 28 U.S.C. § 2072(b).

While I recommend that the Court apply Fed. R. Civ. P. 41 over the analogous state-law rule, that does not end the inquiry. I find that Bay Street's thirty-month delay in serving Crump does not constitute misconduct and was justified by good cause in that Bay Street needed to file to avoid the effect of the statute of limitations, yet it also needed to delay because of the possibility that it might obtain full relief without pressing this action. Bay Street's showing of good cause is enhanced by its deliberate adoption of a strategy appropriately grounded in the Rhode Island state court rules (where it filed and served the action before Crump removed it) providing that failure to serve a filed complaint will not result in dismissal for failure to prosecute until five years have passed. With no evidence that the delay has caused concrete

---

[2] Devine has not joined this motion because he entered into a tolling agreement with Bay Street. See n.8, *infra*.

2

prejudice to Crump, I conclude that this case should not be dismissed pursuant to Fed. R. Civ. P. 41 for failure to prosecute or for non-compliance with the 120-day service rule. Nor does it make sense to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5). Accordingly, I recommend that Crump's motion be denied. ECF No. 5. The reasoning follows.

## I. BACKGROUND[3]

At its core, this case is about a major environmental contamination in a residential neighborhood and the homeowners' decade-long effort to clean it up. Because the reasons for delay of service are material to this motion, I begin with a review of litigation regarding the contamination and cleanup efforts, including the three related lawsuits over the insurance policy at issue in the case before the Court. It is against this backdrop that Plaintiff's explanation for why it waited 933 days to serve Crump must be examined.

### A. Litigation on the Environmental Contamination and Clean Up Efforts

In 2002, a contractor discovered suspiciously-colored soil during a sewer line installation in the Bay Street neighborhood of Tiverton, Rhode Island. Bay Street v. Steadfast, ECF No. 1-1

---

[3] As is appropriate when considering a motion to dismiss for failure to prosecute, this background is drawn from the complaint, the parties' memoranda and the related lawsuits. See Diaz-Santos v. Dep't of Educ., 108 F. App'x 638, 640 (1st Cir. 2004) (per curiam) (on motion to dismiss for lack of prosecution, district courts should consider totality of circumstances, including diligence in prosecuting claims). In addition to the pending case, which I refer to as Bay Street v. Crump & Devine, the related lawsuits are:

- Bay Street Neighborhood, LLC v. Steadfast Ins. Co., C.A. No. 14-cv-505S (D.R.I.) ("Bay Street v. Steadfast"): case against Steadfast Insurance Co., the insurer from which Crump and Devine allegedly procured the policy.

- Bay Street Neighborhood, LLC v. James C. Hermann & Assocs., C.A. No. NC-2014-0073 (R.I. Super. Ct.) ("Bay Street v. JCH Insurance, Crump & Devine"): case naming Crump, Devine and JCH Insurance, another insurance agency that Bay Street believes may have participated in procuring the insurance policy.

- In re EnviroLogic LLC, No. 10-13433-JMD (Bankr. D.N.H.) ("In re EnviroLogic"): Chapter 7 bankruptcy in the District of New Hampshire of the contractor hired for the cleanup.

- Corvello v. New England Gas Co., Inc., C.A. No. 05-221S (D.R.I.) ("Corvello v. Southern Union"): case charging that Southern Union (New England Gas Co.) is responsible for the contamination.

at 6 ¶ 3, ECF No. 12 at 1.[4]  In 2003, the Town of Tiverton placed an emergency moratorium prohibiting excavation on all property in the neighborhood.  Corvello v. Southern Union, ECF No. 33 ¶¶ 23-26.  Facing a potential environmental disaster, the homeowners sued Southern Union as the alleged responsible party under negligence, nuisance and other tort theories.  Corvello v. Southern Union, ECF No. 33 ¶ 2; Bay Street v. Crump & Devine, ECF No. 1 at 6 ¶ 10.  The litigation history of the homeowners' consolidated cases is brobdingnagian – the docket alone spans 339 pages, evidencing a hard-fought battle over several years.  Finally, in April 2008, the parties reached a "contingent" settlement agreement in which Southern Union agreed to pay $12 million, of which $3 million was allocated for remediation, with the understanding that if the homeowners could not achieve a suitable remediation for $3 million or less, they could reject the settlement and litigate their claims.  Corvello v. Southern Union, ECF No. 865 at 6.

Consistent with this understanding, the homeowners contracted with EnviroLogic, LLC ("EnviroLogic") to determine the feasibility of completing the cleanup for under $3 million.  Corvello v. Southern Union, ECF No. 865 at 8; Bay Street v. Steadfast, ECF No. 1-1 at 6 ¶ 6.  Based on EnviroLogic's fixed-price bid below $3 million, in May 2009, the homeowners concluded the settlement with Southern Union, including $3 million to be set aside for the cleanup.  Bay Street v. Crump & Devine, ECF No. 1 at 6 ¶¶ 10, 11; Bay Street v. Steadfast, ECF No. 1-1 at 6 ¶ 5; see Corvello v. Southern Union, ECF No. 905 at 5.  Importantly for purposes of what follows, the settlement required the homeowners to purchase a "cost cap" insurance policy to protect against excess cleanup costs.  Bay Street v. Steadfast, ECF No. 1-1 at 8 ¶ 14.

The homeowners formed Plaintiff Bay Street to manage the cleanup.  Bay Street v. Crump & Devine, ECF No. 1 at 6 ¶ 12.  In June 2009, Bay Street entered into a fixed-price contract with EnviroLogic in the amount of $2,003,000.  Bay Street v. Steadfast, ECF No. 1-1 at

---

[4] These references are to the electronic filings in the referenced case.

7 ¶¶ 8-9. To fulfill the cost-cap requirement in the settlement, Bay Street retained Devine to assist in purchasing an insurance policy. Bay Street v. Crump & Devine, ECF No. 1 at 6 ¶¶ 14-15. Bay Street and Crump now dispute whether Crump or another insurance agency, James C. Hermann & Associates, Limited ("JCH Insurance"), was responsible for Devine's conduct at the time he procured the policy. Either way, on August 25, 2009, Bay Street secured a policy issued by Steadfast Insurance Company ("Steadfast"). Bay Street v. Steadfast, ECF No. 1-1 at 8 ¶ 17. It provides $1 million in insurance for cleanup after costs exceed $2,280,000. See Bay Street v. Steadfast, ECF No. 1-1 at 8 ¶ 18.

EnviroLogic started work in September 2009. See Bay Street v. Steadfast, ECF No. 1-1 at 8 ¶ 20. In July 2010, it reported to Bay Street that it was excavating substantially more soil than expected and experiencing financial difficulty. See Bay Street v. Steadfast, ECF No. 1-1 at 8 ¶ 21. On August 9, 2010, it filed for Chapter 7 bankruptcy in New Hampshire. See Bay Street v. Steadfast, ECF No. 1-1 at 8 ¶ 22. The bankruptcy left thousands of square feet of open pits surrounding homes, approximately 5,000 tons of dug-up contaminated soil and $1 million in potential mechanic's liens. In re EnviroLogic, ECF No. 47 at 2. Bay Street moved quickly to protect its rights – on the day EnviroLogic petitioned for bankruptcy, Bay Street notified Steadfast that it would exceed the $2,280,000 cost cap and requested coverage, as well as permission to continue the cleanup with a different contractor. Bay Street v. Steadfast, ECF No. 1-1 at 8 ¶ 23. On September 8, 2010, Steadfast denied coverage, asserting that EnviroLogic was the "designated contractor" and the scope of the work covered by the policy was terminated by its bankruptcy. Id. Steadfast refused to allow Bay Street to replace EnviroLogic with another contractor and declared it would not pay for any costs incurred after the August 2011 policy

termination date.  Bay Street v. Crump & Devine, ECF No. 1 at 7 ¶ 27; Bay Street v. Steadfast, ECF No. 1-1 at 8 ¶ 17, ECF No. 12 at 2.

Bay Street shifted its strategic focus to EnviroLogic's bankruptcy.  After filing a proof of claim for $1,153,776, it promptly acted to retrieve field data from EnviroLogic so that it could continue the cleanup with another contractor.  In re EnviroLogic, ECF No. 44 at 2.  Blocked by the bankruptcy trustee's argument that a bank had priority over the data, Bay Street offered to pay $10,000 to the estate and asked the bankruptcy court to expedite approval because its need was exigent.[5]  In re EnviroLogic, ECF No. 44, ECF No. 47 at 1-2.  On April 1, 2011, the bankruptcy court approved.  In re EnviroLogic, ECF No. 57.  Next, Bay Street pursued its claims against a $2 million insurance policy purchased by EnviroLogic from Illinois Union Insurance Company ("Illinois Union").  In re EnviroLogic, ECF Nos. 67, 71.  Facing several claimants against the policy, Illinois Union eventually pledged the entire $2 million and, in October 2012, Bay Street moved the bankruptcy court to approve a settlement for an undisclosed amount of the proceeds (under seal) in return for a release of all claims against the bankruptcy estate.  See In re EnviroLogic, ECF Nos. 71, 85, 94.  On November 26, 2012, the bankruptcy court approved the Illinois Union settlement.  In re EnviroLogic, ECF No. 99.

At oral argument on the motion before this Court, Bay Street represented that the environmental remediation remains an ongoing struggle; it now expects that the final cost will be between $4 to $4.5 million.  See also Bay Street v. Steadfast, ECF No. 12 at 3 (remediation will cost over $3.6 million to complete).

### B.    Bay Street's Three Lawsuits over the Steadfast Insurance Policy

---

[5] Bay Street's request to expedite eloquently describes the catastrophic effect of the contamination and botched cleanup on the neighborhood: real estate values had dropped to almost nothing, homeowners could not sell, second mortgages were impossible and even fences could not be installed.  In re EnviroLogic, ECF No. 47 at 2.

Bay Street filed three lawsuits between 2012 and 2014 related to Steadfast's denial of insurance coverage for cleanup overruns.

First, on August 24, 2012, Bay Street filed this suit, <u>Bay Street v. Crump & Devine</u>, in Rhode Island Superior Court against Defendants Crump and Devine.  <u>Bay Street v. Crump & Devine</u> contains state-law claims for negligence, negligent misrepresentation and failure to warn, based on allegations that Crump and Devine owed a duty to procure an insurance policy that would supply the coverage called for by the Southern Union settlement.  <u>Bay Street v. Crump & Devine</u>, ECF No. 1.  This suit was filed at the very end of the three-year statute of limitations – Steadfast issued the policy on August 25, 2009, and Bay Street filed on August 24, 2012.  <u>Bay Street v. Steadfast</u>, ECF No. 1-1 at 8 ¶ 17.  Second, on February 19, 2014, Bay Street filed suit in Rhode Island Superior Court against JCH Insurance, Crump and Devine.  <u>See</u> <u>Bay Street v. JCH Insurance, Crump & Devine</u>.  Aside from the joinder of JCH Insurance as an additional defendant, it is similar to <u>Bay Street v. Crump & Devine</u>.  <u>See</u> <u>Bay Street v. JCH Insurance, Crump & Devine</u>, Compl. ¶¶ 6-38.  According to the state court docket, there has been no activity in the case and the defendants have not been served.  Third, on October 31, 2014, Bay Street brought suit in Rhode Island Superior Court alleging that Steadfast's insurance policy was illusory, violates public policy and the refusal to provide coverage was in bad faith.  <u>Bay Street v. Steadfast</u>, ECF No. 1-1.  Steadfast was served in November 2014 and promptly removed the case to this Court based on diversity jurisdiction; on December 1, 2014, the state court record was filed.  <u>Bay Street v. Steadfast</u>, ECF No. 5.  The case remains pending.

    **C.**    **<u>Bay Street's Explanation for Its Delay In Serving Crump</u>**

During oral argument[6] on Crump's motion to dismiss, Bay Street detailed its reasoning for the 933-day delay in service, explaining that its case against Crump is just one part of its ongoing effort to achieve full relief since the contamination was discovered in 2002 and that, in August 2012, when Bay Street v. Crump & Devine was filed based on the statute of limitations, there was significant uncertainty whether litigation against Crump would be necessary.

The first uncertainty was what would be the total cost of the remediation project. The Southern Union settlement required the contractor to dig square plots, test, dig again and keep going until the tests come back clean. Thus, Bay Street could not determine how much soil would need to be remediated until the work began to yield clean soil. Bay Street now understands that it "is going to be on the order of $4 or $4.5 million by the time it's done." Second, Bay Street was uncertain how much it would recoup from others before litigating against Crump. In August 2012, when Bay Street v. Crump & Devine was filed, Bay Street was still pursuing other avenues to pay for the remediation; it was possible the cleanup could be completed without pressing claims against Crump. Third, Bay Street faced factual uncertainty over who was at fault. When Bay Street v. Crump & Devine was filed, Bay Street did not know whether Devine worked for Crump or JCH Insurance.[7] Bay Street entered into tolling agreements with Devine and JCH Insurance,[8] but it did not secure a tolling agreement with

---

[6] Bay Street's explanation for the delay is not contained in its written objection to Crump's motion to dismiss.

[7] The Steadfast policy identifies Crump as the insurance broker, resulting in the filing of this claim in August 2012. Bay Street v. Steadfast, ECF No. 5 at 56. When Bay Street contacted Devine and his then employer (JCH Insurance), Devine's counsel advised that Devine had changed agencies and was working for JCH Insurance during the relevant time period. Bay Street also communicated with Crump, which asserted that Devine was not working for Crump when the policy issued. Subsequent communications with Devine's counsel suggest that Crump may have kept the commission from the Steadfast policy making it liable regardless of whether Devine was working for Crump or JCH Insurance.

[8] As the environmental cleanup proceeded, Bay Street entered into written two-year tolling agreements with Devine and JCH Insurance on two occasions; it also secured a third oral tolling agreement.

Crump, deeming it unnecessary because it was protected by its superior court filing within the statute of limitations.

Facing these substantial uncertainties and wishing to avoid unnecessary litigation if it could be avoided, Bay Street decided to file <u>Bay Street v. Crump & Devine</u> but not to serve the defendants. It deemed this to be a permissible – indeed, well-accepted – strategy in state court for dealing with such a dilemma because, if the superior court action was dismissed for lack of service, the Rhode Island savings statute, R.I. Gen. Laws § 9-1-22,[9] would allow it to be refiled without a statute of limitations problem.

With this background in mind, I now turn to Crump's motion to dismiss.

## II.  LAW AND ANALYSIS

The gravamen of Crump's motion is that Plaintiff neglected to serve the complaint for 933 days without a justifiable reason for waiting so long. Based on this fact, Crump moves to dismiss the action with prejudice on two grounds: first, failure to prosecute under Fed. R. Civ. P. 41(b) in general and specifically for failure to comply with the applicable rule of civil procedure for timely service of process; and, second, insufficient service of process under Fed. R. Civ. P. 12(b)(5).

### A.      **Failure to Prosecute under Fed. R. Civ. P. 41**

#### 1.      **State or Federal Rule of Civil Procedure**

A threshold question is whether Crump's motion to dismiss for failure to prosecute should be governed by the applicable state or federal rule of civil procedure. R.I. Super. Ct. R. Civ. P. 41 ("Rhode Island Rule 41") and Fed. R. Civ. P. 41 ("Federal Rule 41"), both of which

---

[9] R.I. Gen. Laws § 9-1-22 reads in relevant part: "If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same claim within one year after the termination."

govern lack of prosecution, are materially different: Rhode Island Rule 41 prohibits dismissal for lack of prosecution until five years after the filing of the complaint, while Federal Rule 41 provides no time limit. Compare Rhode Island Rule 41(b)(1) ("[t]he court may, in its discretion, dismiss any action for lack of prosecution where the action has been pending for more than five (5) years"), with Federal Rule 41(b) ("If the plaintiff fails to prosecute . . . a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal . . . operates as an adjudication on the merits.").

Bay Street argues the Court must apply Rhode Island Rule 41 because it will lead to a different outcome from Federal Rule 41, and the difference is grounded in a substantive state-law right that cannot be ignored by a federal court sitting in diversity. To drive home the existence of a substantive right, Bay Street points out that Rhode Island Rule 41(b) must be read together with the savings statute, R.I. Gen. Laws § 9-1-22, which allows for refiling of an action outside the statute of limitations within one year after involuntary termination unless the dismissal was for lack of prosecution. See R.I. Gen. Laws § 9-1-22 ("If an action is timely commenced and is terminated in any other manner than . . . dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same claim within one year after the termination."). Thus, under state law, the statute of limitations is effectively tolled for five years after filing of the complaint, which cannot be dismissed for failure to prosecute during that time. Bay Street contends that this creates a substantive state-law right – akin to a statute of limitations – that cannot be abridged by a federal court. To hold otherwise would violate the Rules Enabling Act, 28 U.S.C. § 2072(b), and run afoul of Erie, 304 U.S. 64.

I start with the basics. The Federal Rules of Civil Procedure apply after a civil action is removed from state court. Fed. R. Civ. P. 81(c)(1). A federal court sitting in diversity employs the state's substantive law and the federal procedural rules. Hanna v. Plumer, 380 U.S. 460, 465 (1965); Godin v. Schencks, 629 F.3d 79, 85 (1st Cir. 2010). The administration of this principle varies depending on whether there is a federal rule addressed to the matter. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 417 (2010) (Stevens, J., concurring in part). To decide if a situation is covered by a federal rule, courts ask if the rule is "sufficiently broad to control the issue before the court." Godin, 629 F.3d at 86 (quoting Shady Grove, 559 U.S. at 422 (Stevens, J., concurring in part)); Gil de Rebollo v. Miami Heat Ass'ns, Inc., 137 F.3d 56, 65 (1st Cir. 1998).[10] If so, the federal rule must be applied unless it violates the Rules Enabling Act, which states that a federal rule of civil procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b); Godin, 629 F.3d at 86 n.12.[11] The Enabling Act instructs that federal rules cannot displace a state's definition of its own right or remedies; it does not mean that the federal rules cannot displace state policy judgments. Shady Grove, 559 U.S. at 418 (Stevens, J., concurring in part) (citing Sibbach v. Wilson & Co., 312 U.S. 1, 13-14 (1941) ("substantive rights" embraces only those state rights sought to be enforced in judicial proceedings)).

The First Circuit has not addressed whether Federal Rule 41 violates the Rules Enabling Act in circumstances where it permits dismissal while the analogous state rule of procedure does

---

[10] Bay Street does not dispute that Federal Rule 41(b) is sufficiently broad to control the issue. See Bay Street v. Crump & Devine, ECF No. 13 at 3 ("the question is whether the federal rule addresses the situation at issue . . . . In this case, it can reasonably be said that Federal Rule 41(b) addresses the situation raised in [Crump's] motion.")

[11] Federal Rules of Civil Procedure can also be challenged as unconstitutional, but Bay Street has not leveled such an attack. See Morel v. DaimlerChrysler AG, 565 F.3d 20, 24 (1st Cir. 2009) (federal rule of civil procedure must be consonant with the Constitution).

not.[12] Nevertheless, despite the dearth of spot-on case law, Supreme Court and First Circuit precedent provide significant guidance.[13] For starters, the Federal Rules of Civil Procedure are presumptively valid. Gil de Rebollo, 137 F.3d at 65. The Supreme Court has never found a violation of the Rules Enabling Act based on a conflict between a federal and state rule of civil procedure. Shady Grove, 559 U.S. at 407 (plurality op.) ("we have rejected every statutory challenge to a Federal Rule that has come before us," citing cases); see Wright & Miller, 4 Fed. Prac. & Proc. Civ. § 1030 (3d ed. 2015). Quite the opposite – "[i]n fact, the Supreme Court has held that a federal rule controls notwithstanding that an inconsistent state rule would, if applied, have resulted in a different outcome." Morel v. DaimlerChrysler AG, 565 F.3d 20, 24 (1st Cir. 2009) (citing Hanna, 380 U.S. at 463-64). As the Supreme Court has explained, "[t]o hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the [Rules] Enabling Act." Morel, 565 F.3d at 24 (quoting Hanna, 380 U.S. at 473-74); see McIntosh v. Antonino, 71 F.3d 29, 37 (1st Cir. 1995) (when federal and state rules collide, the federal rule necessarily trumps the state rule

---

[12] Decisions from other Circuits have applied Federal Rule 41 notwithstanding an analogous state rule that has a less draconian effect on one party or the other. See Boyle v. Am. Auto Serv., Inc., 571 F.3d 734, 742 (8th Cir. 2009) (court properly applied Federal Rule 41 instead of Missouri rule that did not require diligence in obtaining service); Harvey's Wagon Wheel, Inc. v. Van Blitter, 959 F.2d 153, 156-57 (9th Cir. 1992) (court properly applied Federal Rule 41 instead of Nevada rule that would have mandated dismissal). However, these decisions do not directly address the Rules Enabling Act argument made here. Boyle, 571 F.3d at 742 (assumes Rule 41 within limits of Rules Enabling Act); Harvey's Wagon Wheel, 959 F.2d at 157 (parties do not question Rule 41's validity); but see Fradella v. Abbott Labs., No. CIV. A. 99-CV-1301, 1999 WL 461819, at *2 (E.D. La. July 2, 1999) ("Rule 41(b) does not exceed any federal statutory or constitutional limits"); Charles Brieant, 8 Moore's Fed. Practice § 41.02 (2015) ("Rule 41 was intended to establish a uniform procedure governing voluntary and involuntary dismissals in federal district court, and its provisions therefore control over inconsistent state law.").

[13] Bay Street cites Connors v. Suburban Propane Co., 916 F. Supp. 73, 81 (D.N.H. 1996), as an example of a decision that found a federal rule violative of the Rules Enabling Act – specifically Fed. R. Civ. P. 14. Connors has been soundly criticized and its reasoning rejected as unpersuasive. See McNeil v. Nissan Motor Co., 365 F. Supp. 2d 206, 214 (D.N.H. 2005); Z.B. ex rel. Kilmer v. Ammonoosuc Cmty. Health Servs., Inc., 225 F.R.D. 60, 62 (D. Me. 2004); Chapman v. Therriault, No. CIV. 97-372-SD, 1998 WL 1110691, at *2 (D.N.H. Apr. 13, 1998). I decline to rely on it.

in a federal forum). The federal interest in a uniform, comprehensive and rational system substantially outweighs any countervailing state interest that might be served by ceding absolute priority to a conflicting state rule. Morel, 565 F.3d at 25.

Federal Rule 41 is plainly "of that genre." Id. at 24. Dismissal for lack of prosecution is quintessentially a procedural matter that pertains to the in-court dispute resolution process rather than to the dispute that brought the parties into court. Cf. Johansen v. E.I. DuPont De Nemours & Co., 810 F.2d 1377, 1380 (5th Cir. 1987) (discussing Fed. R. Civ. P. 15(c)). Its purpose is the prevention of undue delays in the disposition of pending cases and avoidance of docket congestion in the district courts. Link v. Wabash R.R. Co., 370 U.S. 626, 629-30 (1962). To rule otherwise would intrude on the "federal courts' interest in the integrity of their own processes," and unduly hamstring federal courts from their core procedural duty of managing their own calendars. See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 509 (2001); Link, 370 U.S. at 629-30.

Bay Street's argument that the state procedural rule is inextricably intertwined with a state statute of limitations (the savings statute, R.I. Gen. Laws § 9-1-22) cannot overcome the validity of Federal Rule 41.[14] While state rules that are integral to the state statute of limitations usually apply in diversity cases, Godin, 629 F.3d at 88 n.13, this is subject to the Supreme Court's reasoning in Semtek, which holds that a federal court sitting in diversity should defer to state law only as long as it is compatible with federal interests. Semtek, 531 U.S. at 508-09 (federal reference to state law will not obtain in situations in which state law is incompatible with

---

[14] Bay Street also argues Federal Rule 41 should not apply if the dual concerns of the Erie Doctrine, discouragement of forum-shopping and the inequitable administration of the laws, are implicated by applying the federal rule. See, e.g., Harvey's Wagon Wheel, 959 F.2d at 157; Wester v. Crown Controls Corp., 974 F. Supp. 1284, 1286 (D. Ariz. 1996). The First Circuit has never adopted a categorical rule that requires consideration of forum-shopping and inequitable administration of the laws in a Rules Enabling Act case; rather, it holds that these matters are not important once it is determined a federal rule is sufficiently broad the cover the issue before the court. Morel, 565 F.3d at 24 ("substance/procedure" dichotomy derived from Erie and "outcome determination" test do not apply to matters covered by the Federal Rules of Civil Procedure).

federal interests). Further, the First Circuit's holdings in McIntosh and Morel expressly reject the proposition that a federal rule may be displaced by a state rule simply because the state rule affects the application of a statute of limitations. Morel, 565 F.3d at 25 ("even though [relation back provision of federal] Rule 15(c) is 'intimately connected with the policy of the statute of limitations,'" federal rule applies in diversity case instead of more restrictive state law rule of relation back); McIntosh, 71 F.3d at 36-37 (federal rule for commencement of action precluded suit based on statute of limitation while state rule would have allowed suit to go forward; court applied federal rule to preclude action).

Based on the foregoing, I recommend that this Court conclude that Federal Rule 41(b) is valid under the Rules Enabling Act and supplies the law governing the Court's decision regarding Crump's motion to dismiss for lack of prosecution.

### 2. Failure to Prosecute Based on Unjustified Delay

Focusing on Federal Rule 41(b)'s directive instructing that "[i]f the plaintiff fails to prosecute . . . a defendant may move to dismiss the action or any claim against it" and that, unless otherwise stated, dismissal "operates as an adjudication on the merits,"[15] Crump rests its request for dismissal with prejudice on Plaintiff's lack of a justification for waiting 933 days to complete service. Without citing any specific examples of how the delay has caused it harm, Crump also argues in generalities that extreme delay in service risks spoliation of evidence, deterioration of witness memories and loss of important documents. Crump contends that Bay Street's long delay shows disregard for the statute of limitations and hampers this Court's ability to dispose of the matter expeditiously.

---

[15] In a footnote, Crump also requests the Court to exercise its inherent power to dismiss the complaint for lack of prosecution. The relevant standard is essentially the same as that applicable to a motion under Federal Rule 41; there is no reason to discuss this argument separately. See Richman v. Gen. Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971).

Dismissal with prejudice for failure to prosecute is a harsh and severe sanction that runs counter to the strong policy favoring the disposition of cases on the merits. Enlace Mercantil Internacional, Inc. v. Senior Indus., Inc., 848 F.2d 315, 317 (1st Cir. 1988); see also Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 66-67 (1st Cir. 1999). It is an option only for extreme misconduct, such as "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance," and should be employed only after the district court has determined "that none of the lesser sanctions available to it would truly be appropriate." Enlace Mercantil Internacional, Inc., 848 F.2d at 317; see Ortiz-Anglada, 183 F.3d at 67. Concerns of fairness underlie this heightened standard. See Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 81 (1st Cir. 2009) (Woodcock, J., concurring in part); In re Neurontin Litig., No. 04-10981, 2011 WL 1326548, at *13 (D. Mass. Feb. 4, 2011). District courts have ample discretion to dismiss for lack of prosecution and can do so with or without prejudice. See Shell Co. v. Los Frailes Serv. Station, Inc., 605 F.3d 10, 26 (1st Cir. 2010); Garcia-Perez v. Hosp. Metropolitano, 597 F.3d 6, 7 (1st Cir. 2010) (per curiam).

In examining the appropriateness of the justification for a delay of service in a removed case, one of the factors that this Court can and should consider is the caliber of the plaintiff's conduct by reference to the state law that was applicable as long as the case was in state court. Nealey v. Transportacion Maritima Mexicana, S. A., 662 F.2d 1275, 1281 (9th Cir. 1980). In Nealey, the plaintiff commenced suit in California state court within the state-law statute of limitations but did not serve the complaint until nearly three years later based on the California state law that allowed service within three years. Id. After removal, the defendant moved to dismiss for failure to prosecute, citing the delay in service. The Ninth Circuit affirmed the

15

applicability of Federal Rule 41, but vacated the dismissal for lack for prosecution, reasoning that the delay in service was reasonable in light of the plaintiff's compliance with the state rule.[16] Id. at 1282 n.13, 1284.

The extreme misconduct that our Circuit holds is an essential predicate to dismissal with prejudice under Federal Rule 41(b) is totally absent from this case. Not only is there no affirmative misconduct, but Bay Street plainly has not been sleeping on its rights. Rather, it has diligently worked to complete the cleanup of the neighborhood from the moment the contamination was uncovered in 2002 to the present. After EnviroLogic petitioned for bankruptcy, it immediately submitted a claim to Steadfast to secure funds for cost overruns and aggressively litigated to secure needed field data and recoup on EnviroLogic's insurance policy with Illinois Union. When the statute of limitations neared its end yet substantial uncertainties clouded the decision whether it needed to aggressively litigate against Crump, it deployed a well-recognized state-law procedure to preserve its rights by filing the complaint in superior court, but not serving it, in reliance on the protection of Rhode Island Rule 41, read in tandem with the savings statute, R.I. Gen. Laws § 9-1-22. Then, in 2015, when it became clear that the cleanup would exceed available funds, Bay Street served Crump and began to litigate its claim. These circumstances are a far cry from the "extreme" misconduct required to dismiss for lack of prosecution. To the contrary, Bay Street has presented ample justification for its conduct,

---

[16] Crump reads Nealey narrowly to mean that a plaintiff who served in three years should not be dismissed because the California service rule permitted service within three years, whereas Bay Street is not protected because it did not serve Crump within the 120 days required by R.I. Super. Ct. R. Civ. P. 4(l). Crump's cramped interpretation misses the point – Nealey teaches that the totality of the relevant state-law scheme should be considered. In Rhode Island, that means that the Court must look not just to the 120-day service rule but also to Rhode Island Rule 41(b)(1), which provides that "[t]he court may, in its discretion, dismiss any action for lack of prosecution where the action has been pending for more than five (5) years," in addition to the savings statute, R.I. Gen. Laws § 9-1-22. See also Furtado v. Laferriere, 839 A.2d 533, 537 (R.I. 2004) ("Because the plaintiff's initial claim was dismissed for insufficient service of process pursuant to [State] Rule 4(l) . . . we hold that plaintiff's claim is protected by the savings statute.").

16

including its reliance on the state law procedure that permits exactly what it did.  See Nealey, 662 F.2d at 1281 (excuse for delay that comports with state law "is anything but frivolous").

Also material to this Court's exercise of its discretion is that Crump's complaints of prejudice (fading memories, loss of evidence and unfairness) do not hold much water.  The likely key witness in the case is the agent, Devine; he entered into three tolling agreements with Bay Street and has been aware of the threat of litigation from early on, decreasing the likelihood of a fading memory.  Crump concedes that its defense will focus on whether Devine's relationship to it makes it responsible for his conduct during the relevant time period; this is a legal issue not likely to be affected by the passage of time.  Most importantly, Crump has pointed to no concrete circumstances adversely impacted by staleness.  Likewise, Bay Street has not shown disregard for the statute of limitations – to the contrary, it filed suit against Crump at the last possible moment, and has taken steps to not press its claims against Crump unless and until necessary.  I find that Crump has failed to proffer any evidence of actual prejudice or undue unfairness arising from the delay.

This action sat in state court pursuant to a sound legal strategy chosen by a diligent plaintiff trying efficiently to litigate complex and layered claims in connection with its ongoing effort to remediate the contamination of its members' homes.  Its strategy has not inflicted concrete prejudice or caused undue unfairness to the opposing party.  I find that Crump has won the battle but lost the war and recommend that the case should not be dismissed for lack of prosecution under Federal Rule 41(b).

### 3. Failure to Prosecute Based on Failure to Timely to Serve

Fed. R. Civ. P. 41(b) also authorizes dismissal with prejudice when a "plaintiff fails . . . to comply with these rules."[17]  In a slightly different twist from its first argument for dismissal, Crump argues that Plaintiff failed to comply with "these rules" by not following the Rhode Island rule requiring service within 120 days while the case was in state court.  See Osborne v. Sandoz Nutrition Corp., 67 F.3d 289, at *1-2 (1st Cir. 1995) (per curiam) (state rules govern timeliness of service of process prior to removal); R.I. Super. Ct. R. Civ. P. 4(l) (120 days for service).

Crump's argument clashes with the standard for dismissal with prejudice for failure to comply with rules of civil procedure: as with dismissal for lack of prosecution, dismissal for failure timely to serve is disfavored as "a harsh sanction, which runs counter to our strong policy favoring the disposition of cases on the merits."  Egan v. Polanowicz, No. 13-40092-DHH, 2014 WL 5475078, at *3 (D. Mass. Oct. 24, 2014) (quoting Benjamin v. Aroostook Med. Ctr., 57 F.3d 101, 107 (1st Cir. 1995)).  In deciding such a motion, the district court must deploy its sound discretion, mindful of such factors as "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions."  Ruiz-Rosa v. Rullan, 485 F.3d 150, 153-54 (1st Cir. 2007).  Crump tries to side-step its inability to meet these factors by shoe-horning in the dismissal standard from the state rule of procedure, which requires the Rhode Island Superior Court to "dismiss the action without prejudice" for untimely service unless the plaintiff can show "good cause."  R.I. Super. Ct. R.

---

[17] The standard for involuntary dismissal for failure to comply with "these rules" is essentially identical in Federal and Rhode Island Rule 41(b).  Compare Fed. R. Civ. P. 41(b) ("If the plaintiff fails to . . . comply with these rules . . . a defendant may move to dismiss the action."), with R.I. Super. Ct. R. Civ. P. 41(b)(2) ("On motion of the defendant the court may, in its discretion, dismiss any action for failure of the plaintiff to comply with these rules . . .").  As such, a Rules Enabling Act analysis is unnecessary.

Civ. P. 4(l); see also Fed. R. Civ. P. 4(m). Crump argues there is no good cause for the 933-day delay in service and therefore the case should be dismissed with prejudice.[18]

Whether good cause is required to be shown or not, Bay Street's actions do not come close to qualifying for dismissal based on noncompliance with R.I. Super. Ct. R. Civ. P. 4(l). To the extent that the issue depends on Bay Street's good cause to delay service, I find that it is established; alternatively, I find that Bay Street's time to serve may be deemed extended *nunc pro tunc* to the day when service was accomplished. At bottom, I do not recommend that this Court dismiss this case with prejudice pursuant to Federal Rule 41(b) for failure to comply with the 120-day service requirement in R.I. Super. Ct. R. Civ. P. 4(l). Instead, I recommend that Crump's motion be denied.

### B. Insufficient Service of Process under Fed. R. Civ. P. 12(b)(5)

Switching gears, Crump's final argument for dismissal with prejudice is based on insufficient service of process under Fed. R. Civ. P. 12(b)(5). Crump retreads its argument that R.I. Super. Ct. R. Civ. P. 4(l) controls because Bay Street served Crump while the case remained in state court, the rule requires service within 120 days, and when a plaintiff fails to timely serve, a court must dismiss a plaintiff's complaint. R.I. Super. Ct. R. Civ. P. 4(l) (court "shall dismiss the action"); see Osborne, 67 F.3d 289, at *1-2; see also Fed. R. Civ. P. 4(m) (court "must dismiss" without prejudice for failure to timely serve).

While this Court has discretion to dismiss for insufficient service of process, dismissal is usually without prejudice and the Court also has discretion to extend the time for service. See Jackson v. Warden, FCC Coleman-USP, 259 F. App'x 181, 183 (11th Cir. 2007) (per curiam);

---

[18] A gaping hole in this aspect of Crump's argument may be seen in the plain text of R.I. Super. Ct. R. Civ. P. 4(l), which is restricted to dismissal "without prejudice" – Crump is pressing for dismissal with prejudice. Relatedly, even when a plaintiff cannot show good cause, a federal court has discretion to extend the time period for service. Gray v. Derderian, No. 04-312L, 2007 WL 296212, at *2 (D.R.I. Jan. 26, 2007).

Ascher v. Duggan, 988 F. Supp. 2d 99, 103 (D. Mass. 2013); Ramirez De Arellano v. Colloides Naturels Int'l, 236 F.R.D. 83, 85 (D.P.R. 2006). Bay Street's strategic reasons for delaying service are ample grounds for this Court to exercise its discretion and allow the case to proceed, particularly where Crump has been served and there is no defect in service other than timeliness. It is also significant that, if this Court dismisses the case without prejudice, Bay Street would simply refile the action in state court under the savings statute. See R.I. Gen. Laws § 9-1-22; Bibby v. Petrucci, C.A. No. 07-463-S, 2009 WL 4639101, at *4-5 (D.R.I. Dec. 7, 2009); see also Barner v. Thompson/Ctr. Arms Co. Inc., No. 14-2579, 2015 WL 4620413, at *2-4 (8th Cir. Aug. 4, 2015). Nothing is accomplished by such an inefficient course. Bay Street has served Crump and is ready to proceed with the case in this Court. The motion to dismiss for insufficient service of process should be denied.

## IV. CONCLUSION

For the foregoing reasons, I recommend that CRC Insurance Services, Inc.'s motion to dismiss be denied. ECF No. 5. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 8, 2015